UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE GOMEZ,

                         Petitioner,

- v. -

UNITED STATES OF AMERICA,

                         Respondent.

**ORDER**

17 Civ. 6190 (PGG)

15 Cr. 348 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          On October 11, 2016, Petitioner Jorge Gomez pleaded guilty to conspiracy to distribute and possess with intent to distribute five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).[1] On April 14, 2017, this Court sentenced Gomez to 155 months' imprisonment and five years' supervised release. (See No. 15 Cr. 348, Judgment (Dkt. No. 160)) Gomez moves, pursuant to 28 U.S.C. § 2255, to vacate his sentence. (No. 17 Civ. 6190, Mot. (Dkt. No. 1)) For the reasons stated below, Gomez's petition will be denied.

## BACKGROUND

### I. INDICTMENT AND PLEA

          Indictment 15 Cr. 348 (PGG) was filed on June 10, 2015, and charges Jorge Gomez, Sandy Gomez, Carolina Ramon-Baez, and others with conspiracy to distribute and to possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (No. 15 Cr. 348, Indictment (Dkt. No. 1))

---

[1] Gomez entered his plea before Magistrate Judge Gorenstein. This Court accepted Gorenstein's guilty plea on October 28, 2016. (See No. 15 Cr. 348, Order (Dkt. No. 110))

### A. Plea Agreement

On October 5, 2016, Gomez entered into a plea agreement with the Government in which he agreed to plead guilty to the Indictment. (No. 15 Cr. 348, Dkt. No. 195, Ex. 2 (Plea Agreement)) In the plea agreement, Gomez and the Government entered into the following stipulations concerning application of the Sentencing Guidelines: (1) the base offense level is 30, because Gomez's offense involved between five and fifteen kilograms of cocaine ; (2) a two-level enhancement applies pursuant to § 2D1.1(b)(1), because Gomez had provided a firearm to a co-conspirator to protect their drug business; (3) a three-level reduction pursuant to § 3E1.1(a) and (b) is appropriate, because of Gomez's acceptance of responsibility. Pursuant to these calculations, the parties agreed that Gomez's total offense level is 29. (Id. at 2)

The parties also stipulated that – "[b]ased upon the information now available to [the U.S. Attorney's] Office (including representations by the defense)" – Gomez has 10 criminal history points, placing him in Criminal History Category V. (Id.) The parties further agreed that at offense level 29 and Criminal History Category V, Gomez's Guidelines range is 140 to 175 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment. (Id. at 3)

The parties agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range would be warranted, but that either side could seek a sentence outside of the Guidelines Range pursuant to 18 U.S.C. § 3553(a). (Id. at 3-4)

### B. Rule 11 Proceeding

On October 11, 2016, Gomez pleaded guilty pursuant to the plea agreement before Magistrate Judge Gorenstein. Pursuant to Fed. R. Cr. P. 11, Judge Gorenstein properly advised Gomez of the nature of the charge against him, his rights and the consequences of

pleading guilty – including the penalties he faced – and the key provisions of the plea agreement. (No. 15 Cr. 348, Plea Tr. (Dkt. No. 106) at 4-9)  Gomez acknowledged that he had discussed the charges and his intention to plead guilty with his court-appointed attorney, Michael Sporn, and that he was satisfied with Sporn's representation of him.  (Id. at 4).

Gomez also assured Judge Gorenstein that his guilty plea was not influenced by any direct or indirect "force or threats," that he had reviewed all of the terms and conditions of the plea agreement with Sporn prior to signing it, and that his "plea [was] voluntary, that is, made of [his] own free will."  (Id. at 7-9).  Judge Gorenstein also confirmed with Gomez that he understood that the "sentencing judge [would] not be bound by the calculation in the [plea agreement]," but would instead have discretion to consider many factors, including the stipulated Guidelines range, in determining Gomez's sentence.  (Id. at 8-9).

Finally, Gomez was asked to describe, in his own words, the conduct that made him guilty of the charge in the Indictment.  (Id. at 10)  Gomez stated that he "agreed with others to get a vehicle SUV that had a hidden compartment for the purpose of having another person transport cocaine in [the] hidden compartment from the south to the New York/New Jersey area where it [would] have been distributed."  (Id. at 11)  Gomez further stated that he understood that five kilograms of cocaine would be transported in the hidden compartment.  (Id.)

## II. SENTENCING

### A. Presentence Investigation and Report

The Probation Office issued a Presentence Investigation Report ("PSR") on December 29, 2016.  (No. 15 Cr. 348, PSR (Dkt. No. 136))  In determining the offense level, the Probation Office employed the same calculations set forth in the parties' plea agreement, and arrived at the same total offense level of 29.  (Id. at 10)

### B. Gomez Post-Plea Disputes With Counsel

On February 28, 2017, Gomez's counsel – Michael Sporn – submitted a letter informing the Court that Gomez was requesting that new counsel be appointed to represent him. (No. 15 Cr. 348 (Dkt. No. 144) At a March 1, 2017 conference, this Court asked Gomez to explain why he wanted Sporn replaced, noting that it was unusual for a defendant to seek a change of counsel between a guilty plea and sentencing. (No. 15 Cr. 348, March 1, 2017 Conf. Tr. (Dkt. No. 153) at 2) The following dialogue ensued:

> THE DEFENDANT: I got issues regarding my sentencing arguments. They are relevant to my culpability as well as to 3553(a) factors.
>
> THE COURT: So you have issues with what?
>
> THE DEFENDANT: My sentencing. Regarding my sentencing. I have some issues with him.
>
> THE COURT: You disagree with him as to the arguments that should be made –
>
> THE DEFENDANT: Yes.
>
> THE COURT: – in your favor at sentencing? Is that what you're saying?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Without telling me the details of it, have you told Mr. Sporn what your concerns are?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you feel that he hasn't been responsive to those concerns?
>
> THE DEFENDANT: I feel me and him don't have the same understanding. It's like a conflict, and it can't be resolved.
>
> THE COURT: Do you agree with that, Mr. Sporn?
>
> MR. SPORN: Well, let me say this, Judge. I think we have a different approach on what ought to be emphasized at the sentencing proceeding, and he's raises some points that he would like me to address. They are part of the mix, but we have differing perspectives about the significance of those points I suppose in the larger scheme of things.

(Id. at 2-3) The Court then noted that while Mr. Sporn had made "an entirely professional presentation in support of the request for the minimum possible sentence here, which is ten years," "Mr. Gomez is facing a very serious situation . . . a guidelines range of 140 to 175 months." Given this context, it was "important to [the Court] that Mr. Gomez feels that he has an advocate with whom he's on the same page and who is presenting the arguments that he feels would be most effective." (Id. at 4)

The Court warned Gomez that if his application to replace Sporn was granted, "this will be it. There will be no more lawyers. You would be assigned another lawyer under the Criminal Justice Act, whoever happens to be on duty today . . . and it would be up to you to build a good relationship with that person, because we can't, as I'm sure you understand, replace lawyers willy nilly, particularly in a situation where . . . you have a fine advocate representing you now, someone who's extremely experienced, who's been practicing in this court for decades, and who knows what he's doing." The Court then asked Gomez whether it was still his wish that Sporn be replaced. Gomez said that it was, and the Court then granted his application. (Id. at 5) Richard Lind was then appointed to represent Gomez. (No. 15 Cr. 348, March 27, 2017 Def. Ltr. (Dkt. No. 152) at 1)

Gomez had disputes with Lind as well, however. In an April 4, 2017 letter, Lind informed the Court that Gomez "wanted to pursue a course of action which [Lind] had previously told [Gomez would be] counterproductive, and which he told me he recognized to be not helpful." (No. 15 Cr. 348, April 4, 2017 Def. Ltr. (Dkt. No. 155) at 1) Lind requested that "either additional – or replacement – CJA counsel be appointed to advise Gomez, or that the

5

matter be referred to a Magistrate Judge so that Gomez may take advantage of unbiased guidance." (Id.)

On April 10, 2017, the Court conducted a hearing concerning Gomez's disputes with Lind, his new court-appointed lawyer. (No. 15 Cr. 348, Apr. 10, 2017 Conf. Tr. (Dkt. No. 165)) Lind explained that Gomez told him that he had "disposed of Mr. Sporn" after a post-plea effort to cooperate with the Government "did not work out to Mr. Gomez's satisfaction." (Id. at 5) Gomez further complained to Lind that he learned only after his guilty plea that the actual amount of cocaine seized "was a couple of grams less than 5 kilos." (Id. at 6) Lind had explained to Gomez that – given that he had pled guilty to a conspiracy count – the fact that the actual amount of cocaine seized was 4.98 kilograms rather than five kilograms was of little import. (Id.) Gomez nonetheless was pressing Lind to move to withdraw Gomez's plea – a course of action that Lind believed would be counterproductive. (Id.)

The Court responded as follows:

> Let me say that, in my judgment, the plea agreement that was obtained [by Mr. Sporn for] Mr. Gomez was highly favorable to him. This was a conspiracy count that he pled guilty to. There was discussion that the hidden compartment in the vehicle that, unbeknownst to Mr. Gomez, had been provided to the DEA, there was discussion between Mr. Gomez and the cooperating witness that the hidden compartment could hold as much as 25 to 30 kilograms of cocaine.
> . . . .
> So, rather than the 5 to 15 [kilograms] being an excessive amount, I think, were Mr. Gomez to have gone to trial, the amount could have actually been much larger and subjected him to a higher sentencing range.
> . . . .
> So I see this as a highly favorable agreement to him. I understand he's fixated on whether the amount that was seized was actually 5 kilograms or slightly under, but that's irrelevant for purposes of sentencing.
> . . . .
> The amount that was foreseeable to him was far greater than 5 kilograms of cocaine. The intent was to bring up as much as 25 to 30. That's why they obtained the car with the trap.
>
> So that's my reaction to what I've heard.

(Id. at 7-8)

The Court went on to rule that it would not appoint a third lawyer to represent Gomez:

> I'm not going to appoint another lawyer. I was very clear with Mr. Gomez when I reluctantly excused Mr. Sporn back in March, that that was a one-time event. Frankly, I saw no basis for relieving Mr. Sporn, who is an extremely experienced criminal defense lawyer. He's been practicing in this court for decades.
>
> So I did it reluctantly, but it was clear to me that, as sometimes develops, there was a difference of opinion as to how to proceed. So I was very clear with Mr. Gomez. I would do this once, and I did it, and a very experienced [lawyer], actually someone similar to Mr. Sporn, was substituted in his place, someone with the same amount of experience, decades of practice in this court, Mr. Lind.
>
> So that's where we are. So I think the only advice I could offer you, Mr. Lind, is if your client insists on presenting arguments that you deem not supported by the law, I suppose you could make your arguments on behalf of him, and he can submit whatever supplementary argument she wishes to make to me, or he can address me directly, as he deems fit.
>
> I don't see the virtue in substituting a third lawyer, because I don't have any reason to believe the advice is going to be any different. In fact, I'm quite certain the advice is not going to be any different. So it would be futile for me to appoint someone else or even to have a third lawyer advise him . . . .

(Id. at 9-10)

### C.    **The Sentencing Hearing**

On April 14, 2017, the parties appeared for sentencing. The Court began the proceedings by questioning Lind and Gomez about whether there were any continuing difficulties in the attorney-client relationship:

> THE COURT: . . . We were last together on April 10. At that time, I questioned Mr. Lind about a communication I had received in which he told me that his client was unhappy with his representation.
>
> Mr. Lind, have there been any further developments on that issue?

>MR. LIND: Nothing really. I think we now have a more positive relationship, Judge. I think he understands what your Honor ruled and the entirety of what I tried to express to the Court.
>
>THE COURT: All right. Mr. Gomez, do you have any complaints about Mr. Lind's representation? Are you comfortable going forward with him at this point?
>
>THE DEFENDANT: Yes.

(No. 15 Cr. 348, Sentencing Tr. (Dkt. No. 167) at 2)

The Court then addressed the Pre-Sentence Report ("PSR"), ordering corrections as to certain typographical errors relating to the dates of particular events. The PSR's factual statement was otherwise adopted without objection. (Id. at 5)

The Court then turned to the Guidelines calculations set forth in the PSR, noting that Gomez's total offense level was 29, "which yields a guidelines range of 140 to 175 months' imprisonment." (Id. at 5-6) Defense counsel did not object to the Guidelines calculation, but argued in accordance with Defendant's sentencing brief for a downward variance to the minimum mandatory sentence of 120 months, based on new revisions to the commentary to § 3B1.2 of the Guidelines. (Id. at 6; see also No. 15 Cr. 348, Def. Sentencing Br. (Dkt. No. 152) at 3; U.S.S.G. § 3B1.2) Counsel argued that the revisions suggested that the lack of proprietary interest in a particular transaction should be a factor considered in making downward variance. (No. 15 Cr. 348, Sentencing Tr. (Dkt. No. 167) at 6)

This Court then discussed the nature and circumstances of Gomez's offense, as well as his personal history and characteristics. (Id. at 9) The Court began by noting that "this was an unusual case in that a DEA informant was approached about providing a vehicle that contained a secret compartment, commonly known as a trap, and that was the vehicle that was used to drive down to New Orleans to recover the cocaine." (Id.) The Court then stated that the quantities the conspirators discussed – which far exceeded the five kilograms of cocaine that

8

Gomez was being held responsible for – were relevant to a determination of where in the applicable range Gomez's sentence should fall. (Id. at 9-10) The Court noted that Gomez sought a "vehicle with a trap" from someone who turned out to be a DEA informant in the hope of "obtain[ing] as much as 50 to 100 kilograms of cocaine to bring back to the New York-New Jersey area [from New Orleans]." (Id. at 10). The Court reiterated that "the plea agreement in which the government stipulated to an amount of 5 to 15 kilograms was extremely favorable to [Gomez]." (Id. at 12) "The evidence that was admitted at the trial of his brother, Sandy Gomez, demonstrates that Jorge Gomez actually agreed to participate in a conspiracy that involved a much larger amount of cocaine. . . . [I]t's clear that Mr. Jorge Gomez was looking for a truck with a compartment that could hold as much as 25 to 30 kilograms of cocaine." (Id. at 11-12)

The Court also highlighted Gomez's serious criminal record, which included two theft-related convictions, sexual assault in the second degree, a prior drug trafficking conviction, and repeated parole violations. (Id. at 13-14) The Court concluded that Gomez was a "danger to the community given his criminal record and behavior while under court supervision. I believe that there is a high risk of recidivism here." (Id. at 14)

The Court then imposed a within Guidelines sentence of 155 months' imprisonment and five years of supervised release. (Id. at 15)

### III.    GOMEZ'S DIRECT APPEAL

Lind filed a notice of appeal on Gomez's behalf. (No. 15 Cr. 348, Notice of Appeal (Dkt. No. 161)) He later submitted a motion pursuant to Anders v. California, 386 U.S. 738 (1967), however, and the Second Circuit granted the Government's motion for summary affirmance. See United States v. Gomez, 751 F. App'x 63, 64 n.1 (2d Cir. 2018).

9

## IV.  GOMEZ'S HABEAS PETITION

Gomez filed the instant petition on August 17, 2017. (No. 17 Civ. 6190, Mot. (Dkt. No. 1))  Gomez claims that his lawyer at the plea bargaining stage – Michael Sporn – was constitutionally ineffective. (Id. at 5)  Gomez complains that Sporn advised him to plead guilty to conspiracy to distribute and possess with intent to distribute five kilograms of cocaine – an offense with a 10 year mandatory minimum – even though a lab report for the seized cocaine revealed that only 4.98 kilograms had been seized by the police. (No. 17 Civ. 6190, Pet. Br. (Dkt. No. 2) at 7-10)  Gomez also claims that Sporn did not inform Gomez about the findings of the lab report and other evidence until after he pleaded guilty. (Id. at 7)  Gomez also complains that Sporn had advised him to "plead guilty . . . or else . . . end up with life." (No. 17 Civ. 6190, Pet. Br. (Dkt. No. 2), Ex. A at 1)

Gomez also argues that he received constitutionally ineffective assistance of counsel from Richard Lind during the sentencing phase of the proceedings.  Gomez argues that Lind was constitutionally ineffective because he failed to (1) file a notice of appeal (No. 17 Civ. 6190, Mot. (Dkt. No. 1) at 6-7)[2]; and (2) "make any objections . . . in regards to the court['s] judicial fact finding . . . as to [the] weight of [cocaine involved], and a gun enhancement," when the "preponderance of the evidence" did not support either finding. (No. 17 Civ. 6190, Pet. Br. (Dkt No. 2) at 12)  According to Gomez, Lind promised that he would raise both issues at sentencing, but did not do so. (Id.)

---

[2]  Gomez makes this claim in his petition and supporting affidavit, but not in his memorandum of law. (No. 17 Civ. 6190, Pet. Br. (Dkt. No. 2) at 19)

## V. DEFENSE COUNSELS' SUBMISSIONS

In response to Gomez's petition, this Court directed Sporn and Lind to submit affidavits addressing Gomez's allegations. (No. 15 Cr. 348, Order (Dkt. No. 183))

In a May 11, 2018 declaration (see No. 15 Cr. 348, Dkt. No. 195, Ex. 1 (Sporn Decl.)), Sporn states that he never told Gomez that he would receive a life sentence if he did not plead guilty. Instead, Sporn advised Gomez that "in [Sporn's] judgment the likely sentence if convicted after a trial would be substantially greater . . . ." (Id. at ¶ 2) Sporn also states that he "went through [the evidence] repeatedly and in detail" with Gomez, and that they explicitly discussed the fact that the lab report showed that slightly less than five kilograms of cocaine had been seized. (Id. at ¶¶ 3-4) Indeed, Sporn told Gomez that he would use this fact to buttress his plea negotiations with the Government. (Id. at ¶ 4) Sporn goes on to say that that strategy proved unsuccessful, because the Government "predictably respond[ed] that the charged conspiracy was based on other evidence also." (Id. at ¶ 5) Sporn states that he reported the Government's response to Gomez, as well as the Government's threat to seek additional charges against Gomez if he rejected the Government's plea offer. (Id. at ¶¶ 6-7) According to Sporn, any assertion that Gomez "did not discover that slightly less than 5 kilograms were seized . . . until after he entered his plea is not accurate." (Id.)

In Lind's May 11, 2018 affirmation (see No. 15 Cr. 348, Dkt. No. 195, Ex. 6 (Lind Affirmation)), he states that Gomez's assertion that he failed to file a notice of appeal is "utterly false." (Id. at ¶ 3) Lind notes that he filed a notice of appeal on April 28, 2017 – three days after judgment was entered – and that he filed an Anders brief on December 29, 2017. (Id.)

11

Lind also denies Gomez's charge that Lind breached his promise to object at sentencing to the PSR's drug weight and weapon enhancement findings. According to Lind, he and Gomez never discussed objecting to the weapon enhancement. In this regard, Lind notes that the parties stipulated to the two-level weapon enhancement in the plea agreement. (Id. at ¶ 5)

As to drug weight, Lind says that he never promised to raise this issue at sentencing. Lind states that Gomez told him – prior to sentencing – that he wanted to challenge the PSR's finding concerning five kilograms of cocaine, and that Lind advised Gomez that – given the stipulation to five kilograms in the plea agreement and Gomez's statements during the Rule 11 allocution admitting to five kilograms – doing so could put in jeopardy Gomez's three-level reduction for acceptance of responsibility. (Id. at ¶ 6 and n.1) Gomez nonetheless "asserted that he wanted to pursue that claim." (Id. at ¶ 7) Gomez's insistence on this point led Lind to send his April 4, 2017 letter to the Court reporting that Gomez "'wanted to pursue a course of action which I had previously told him I believed was counterproductive.'" (Id.)

After the April 10, 2017 court conference – at which the Court had noted that there was evidence that Gomez had told the cooperating witness that he wanted a vehicle that could hold much more than five kilograms of cocaine – "Gomez told [Lind] that he did not wish to pursue the weight issue." (Id. at ¶ 8)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Standard for Relief Under 28 U.S.C. § 2255

28 U.S.C. § 2255 provides, in relevant part, that "[a] prisoner in custody under sentence of a [Federal] court . . . claiming the right to be released upon the ground that the

12

sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence . . . is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence." 28 U.S.C. § 2255(a). "Relief under section 2255 is available only 'for constitutional error, lack of jurisdiction, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (quoting Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996).

When ruling on a Section 2255 motion, the district court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). "To warrant a hearing, the movant 'must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief.'" Mann v. United States, No. 15 Cr. 667-4, 2016 WL 5900174, at *7 (S.D.N.Y. Oct. 11, 2016) (quoting Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013)). "A court need not, however, credit factual assertions contradicted by evidence in the record of the underlying proceeding," and "'when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary.'" Id. (quoting Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011)).

### B. <u>Ineffective Assistance of Counsel</u>

Courts analyze ineffective assistance of counsel claims under the framework set out in Strickland v. United States, 466 U.S. 668 (1984). "In order to prevail on a claim of ineffective assistance of counsel . . . , a habeas petitioner must satisfy a two-part test." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). The petitioner "'must demonstrate both "that

13

counsel's performance was deficient" and "that the deficient performance prejudiced the defense."'" Garner v. Lee, 908 F.3d 845, 861 (2d Cir. 2018) (quoting Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017) (quoting Strickland, 466 U.S. at 687))).

"The performance component of the Strickland test asks whether a 'counsel's representation fell below an objective standard of reasonableness.'" Kovacs v. United States, 744 F.3d 44, 50 (2d Cir. 2014) (quoting Strickland, 466 U.S. at 688). "A defense counsel's performance is unreasonable when it is so deficient that it falls outside the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). "When assessing counsel's performance, a court 'must judge his conduct on the basis of the facts of the particular case, "viewed as of the time of the counsel's conduct," and may not use hindsight to second-guess his strategy choices.'" Muniz v. United States, 360 F. Supp. 2d 574, 578 (S.D.N.Y. 2005) (quoting Mayo, 13 F.3d at 533 (quoting Strickland, 466 U.S. at 690)); see also Parisi v. United States, 529 F.3d 134, 141 (2d Cir. 2008) (warning of the risk that "in the illuminating light of hindsight, [courts] might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him"). Accordingly, courts "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Parisi, 529 F.3d at 141 (quoting Strickland, 466 U.S. at 689).

To establish prejudice under the second Strickland prong, a defendant "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Garner, 908 F.3d at 861-62 (quoting Strickland, 466 U.S. at 694)).

14

## II. ANALYSIS

### A. Michael Sporn Was Not Constitutionally Ineffective

Gomez claims that Michael Sporn was constitutionally ineffective in advising Gomez to plead guilty to an offense with a ten-year mandatory minimum because Sporn did not review or provide to Gomez a lab report that showed that the actual amount of cocaine seized by the police was less than five kilograms. (No. 17 Civ. 6190, Pet. Br. (Dkt. No. 2), Ex. A at 1-2) Gomez also claims that Sporn was ineffective in advising Gomez that not pleading guilty would result in Gomez receiving a life sentence, thereby causing Gomez's guilty plea to be not knowing and voluntary. (Id. at 1)

As an initial matter, this Court does not credit Gomez's implausible claims, given Sporn's declaration. (No. 15 Cr. 348, Dkt. No. 195, Ex. 1 (Sporn Decl.) at ¶ 2) But more importantly, Sporn's recommendation that Gomez plead guilty does not fall below an objective standard of reasonableness under the first prong of Strickland. As an initial matter, and as both Sporn and Lind explained to Gomez, the Indictment charged Gomez with conspiracy, and thus the amount of drugs actually seized was not dispositive. The fact that the lab report showed 4.98 kilograms rather than five kilograms of cocaine was not material, because there was ample evidence – included tape-recorded evidence – that Gomez had discussed transporting from New Orleans to the New York area much larger quantities of cocaine – 25 to 30 kilograms. (No. 15 Cr. 348, Dkt. No. 195, Ex. 1 (Sporn Decl.) at ¶ 5) Indeed, as this Court observed prior to and at sentencing, the plea agreement negotiated by Sporn was "highly favorable" to Gomez, given the evidence that he had conspired to transport much larger quantities of cocaine. (No. 15 Cr. 348, Apr. 10, 2017 Conf. Tr. (Dkt. No. 165) at 7-8; Sentencing Tr. (Dkt. No. 167) at 12)

Sporn also notes that the Government had warned that – if Gomez rejected the Government's plea offer – the Government would obtain a superseding indictment that would add "a § 924(c) count and perhaps . . . a count charging distribution of heroin." (No. 15 Cr. 348, Dkt. No. 195, Ex. 1 (Sporn Decl.) at ¶ 7) The evidence before the Court indicates that these warnings were not empty threats, and that Gomez risked a much longer sentence if he rejected the Government's plea offer.

A court "may not use hindsight to second-guess [counsel's] strategy choices," Muniz, 360 F. Supp. 2d at 578 (citations omitted), but here – even in the exercise of hindsight – there is no basis to question Sporn's strategy. His conduct falls well within "the wide range of reasonable professional assistance." Parisi, 529 F.3d at 141.

Gomez also has not demonstrated that he was prejudiced by ineffective assistance under the second prong of Strickland. Gomez must demonstrate that there is a reasonable probability that, but for Sporn's alleged unprofessional errors, he would have been sentenced to less than 155 months in prison. There is no basis to reach such a conclusion here. During Gomez's sentencing, this Court acknowledged that the "evidence admitted at the trial of his brother, Sandy Gomez, demonstrates that Gomez actually agreed to participate in a conspiracy that involved a much larger amount of cocaine." (No. 15 Cr. 348, Sentencing Tr. (Dkt. No. 167) at 11-12) This Court relied on this evidence in determining where within the stipulated Guidelines range to sentence Gomez, and also cited Gomez's extensive and serious criminal record, and his record of repeated parole violations. (Id. at 15). In sum, Gomez has not shown that the result would have been different absent the alleged ineffective assistance.

Gomez also complains that Sporn told him to plead guilty or he would "end up with life." (No. 17 Civ. 6190, Pet. Br. (Dkt No. 2), Ex. A at 1) Gomez appears to argue that his

16

plea was not knowing and voluntary because Sporn had informed him that he would receive a life sentence if he did not plead guilty. In his declaration, Sporn states that he merely informed Gomez of the "mandatory minimums and the maximums allowed by statute"; did not tell him what the sentence would be; but did inform Gomez of the Government's threat to bring additional charges. (No. 15 Cr. 348, Dkt. No. 195, Ex. 1 (Sporn Decl.) at ¶¶ 2, 7) Moreover, during the plea hearing, Gomez told Judge Gorenstein that his guilty plea and entry into the plea agreement was not influenced by "any force or threats." (No. 15 Cr. 348, Plea Tr. (Dkt. No. 106) at 7) Given Sporn's declaration, and given that the "[s]olemn declarations in open court" – including "the representations of the defendant . . . at a [plea] hearing" – "carry a strong presumption of verity," Gomez's claim that he pled guilty only because of a concern that he would otherwise receive a life sentence is not persuasive. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008) ("[S]tatements at a plea allocution carry a strong presumption of veracity . . . .")

To the extent that Gomez's petition is premised on a claim that Sporn provided ineffective assistance of counsel, the petition will be denied.

### B. Richard Lind Was Not Constitutionally Ineffective

Gomez claims that Lind was constitutionally ineffective in that he (1) failed to file a notice of appeal on Gomez's behalf (No. 17 Civ. 6190, Mot. (Dkt. No. 1) at 6); and (2) breached a promise to object to the weapon enhancement and drug weight calculation set forth in the PSR. (No. 17 Civ. 6190, Pet. Br. (Dkt. No. 2) at 12)

Gomez's assertion that Lind failed to file a notice of appeal is plainly contradicted by the record. Lind filed a notice of appeal for Gomez on April 28, 2017. (No. 15 Cr. 348,

17

Notice of Appeal (Dkt. No. 161)) That Lind subsequently filed an Anders motion does not demonstrate that he provided ineffective assistance of counsel.

Gomez's allegation that Lind was ineffective in failing to object to the weapon enhancement and drug weight findings set forth in the PSR does not meet the high bar of Strickland's first prong. As an initial matter, Gomez stipulated to the weapon enhancement and drug weight calculation in his plea agreement. (No. 15 Cr. 348, Dkt. No. 195, Ex. 2 (Plea Agreement) at 2) During the Rule 11 allocution, Gomez stated that he had read the plea agreement and that all of the terms and conditions of the plea agreement had been explained to him by his lawyer. (No. 15 Cr. 348, Plea Tr. (Dkt. No. 106) at 7-8) As the Second Circuit has recognized, "factual stipulations are bargaining chips in the hands of defendants." Granik, 386 F.3d at 412. Accordingly, courts have rejected ineffective assistance claims premised on an attorney's failure to object to sentencing enhancements where those enhancements were the subject of stipulations in a plea agreement. See Kapelioujnyi, 779 F. Supp. 2d at 255 ("counsel's decision not to object to [sentencing] enhancements may have been a strategic decision employed to secure the [plea] agreement").

Moreover, it is clear that Lind's failure to object to the weapon enhancement and drug weight calculation was a reasonable strategic decision. As discussed above, Lind believed that any challenge to these Guidelines stipulations would put in jeopardy the three-level reduction Gomez was to receive for acceptance of responsibility. (No. 15 Cr. 348, Dkt. No. 195, Ex. 6 (Lind Affirmation) at ¶ 6) Lind's conduct cannot be said to be constitutionally ineffective under Strickland.

## **CONCLUSION**

For the reasons stated above, Petitioner's motion to vacate, set aside, or correct his sentence is denied. The Clerk of Court is directed to mail a copy of this order to Petitioner and to close this case.

Dated: New York, New York
December 20, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge